UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICIA CHRISTINE KAIN,

                    Plaintiff,

v.                                          **DECISION AND ORDER**
                                                        14-CV-650S

CAROLYN W. COLVIN, *Acting
Commissioner of Social Security*,

                    Defendant.

      1.      Plaintiff Patricia Christine Kain challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since June 3, 2010 due to bulging discs in her neck, osteoarthritis in her knees, chronic migraines, and hemorrhaging of the right eye. Plaintiff contends that her impairments render her unable to work, and thus, entitle her to payment of Supplemental Security Income ("SSI") under the Act.

      2.      Plaintiff filed an application for disability insurance benefits and supplemental security income on June 9, 2010, which was denied on October 8, 2010. On October 14, 2010, Plaintiff requested a hearing before an ALJ. On September 8, 2011, ALJ Timothy M. McGuan conducted a hearing at which Plaintiff appeared and testified. Plaintiff was represented by counsel. At the time of the hearing, Plaintiff was 32 years old, with an eighth grade education, and limited work experience. The ALJ considered the case *de novo*, and on October 12, 2011, issued a decision denying Plaintiff's application for benefits. The Appeals Council granted Plaintiff's request for

1

review on March 9, 2012, and remanded the case for further proceedings. On July 24, 2012, ALJ McGuan conducted a supplemental hearing at which Plaintiff and a vocational expert appeared and testified. Plaintiff was represented by counsel. On November 9, 2012, the ALJ issued a decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on June 9, 2014. Plaintiff filed the current action on August 11, 2014, challenging the Commissioner's final decision.[1]

3. On December 22, 2014, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 6). On February 26, 2015, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 10). Plaintiff filed a reply on March 17, 2015 (Docket No. 11), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational

---

[1] The November 9, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

> next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 9, 2010, six days after the alleged onset date of June 3, 2010 (R. at 25);[2] (2)

---

[2] Citations to the underlying administrative record are designated as "R."

4

Plaintiff's extensive facet arthropathy at L4-S1, minimal disc bulges at C4-6 with no stenosis, disc herniation at L4-5 with no significant stenosis, mild joint effusion and mild tendonitis of the right knee with no evidence of tear, and depressive disorder were "severe" impairments within the meaning of the Act (R. at 25); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 27); (4) Plaintiff retains the residual functional capacity to perform light work (which requires lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls, 20 C.F.R. § 416.967(b)), except that she requires the option to sit or stand after one hour (R. at 29); and (5) Plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 38). Thus, the ALJ found that Plaintiff was not under a disability, as defined by the Act, at any time from June 9, 2010, through the date of the decision. (R. at 39).

10. Plaintiff contends that the ALJ made two errors in his decision. First, Plaintiff argues that the ALJ's physical RFC evaluation was not supported by substantial evidence because the record does not contain a medical opinion addressing Plaintiff's exertional limitations, and the ALJ was not qualified to assess Plaintiff's exertional capacity himself. She contends that the medical evidence in the record constituted bare medical findings and required review from a medical expert, therefore, the ALJ had a duty to develop the record and obtain a medical opinion that addressed Plaintiff's exertional limitations.

5

The RFC determination is an assessment of the claimant's ability to do physical and mental work activities on a sustained basis, despite the presence of limiting impairments, see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and is at the sole discretion of the ALJ after weighing all relevant objective and subjective evidence in the record, including the claimant's medical records, acceptable medical source opinions, "other source" opinions, and the claimant's testimony regarding her alleged limitations. 20 C.F.R. § 404.1545 (noting that a claimant's RFC must be consistent with the entire medical record). "Yet, an ALJ's examination of the medical record is not plenary: 'An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" Englert v. Colvin, 15-CV-564-FPG, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016) (quoting Dailey v. Astrue, No. 09-CV-0099(A)(M), 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010)). When the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, "the general rule is that the Commissioner 'may not make the connection himself.'" Id. at *4 (quoting Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015).

Here, the administrative record contains extensive records from Plaintiff's treating physician, as well as imaging reports but, as the ALJ notes, "no treating source has submitted an assessment of the claimant's functional limitations or an opinion as to whether the claimant is 'disabled.'" (R. at 37). The records from Plaintiff's treating physician, Dr. Michael Calabrese, span from February 13, 2008, through July 11, 2011. (R. at 424-503, 697-717). Prior to Plaintiff's alleged onset date of June 3, 2010, Dr.

6

Calabrese recorded complaints of continued or increased neck and back pain, as well as complaints of new pains and a decreased range of motion in her lumbar and cervical spines. (R. at 433, 437, 440, 442, 445-46, 451-57). While these records do note a "Plan" for Plaintiff, which included medications, that plan does not relate the complaints or Dr. Calabrese's findings to Plaintiff's ability to sit, stand, walk, or lift. (R. at 437, 442, 445-46, 451-57). The treatment records following Plaintiff's alleged onset date also note complaints of neck and back pain along with a decreased range of motion in the knees, but, again, Dr. Calabrese does not record his opinion of how these injuries and limitations might impact Plaintiff's exertional abilities. (R. at 708, 712, 716). The record also contains reports of MRI scans of Plaintiff's lumbar and cervical spines (R. at 410, 414, 599-602), the report of an upper extremity electro-diagnostic evaluation (R. at 461-66), and multiple x-ray reports (R. at 417-18, 603, 695-96). These evaluations contain description of Plaintiff's impairments, but contain no discussion of how the imaging relates to Plaintiff's ability to sit, stand, walk, or lift. (R. at 463). In other words, despite the three years of medical records around Plaintiff's complaints and diagnoses, and numerous imaging reports, nothing from Plaintiff's treating sources relates this data to her functional capabilities or limitations.

Indeed, there is no opinion on these capabilities from any medical source. The consultative examining physician, Dr. Kathleen Kelley, opined that "bending or twisting repetitively of the [cervical ]spine or [lumbosacral] spine [would] require comfort breaks," that Plaintiff should refrain from areas where she needs acute vision, and that she should refrain from "activity requiring balance or working around heights or heavy equipment." (R. at 508). Dr. Kelley provided no explanation as to what she meant by

7

"comfort breaks," and made no assessment of Plaintiff's ability to walk, stand, sit, or lift and carry objects. (R. at 504-08). The ALJ stated that he gave "significant weight" to this opinion, and that he "accommodated" for the limitations assessed by Dr. Kelley in his finding that Plaintiff required the option to sit or stand after one hour. (R. at 38). Because there is no further explanation as to the meaning of "comfort break", the ALJ's RFC appears to be based on his speculation as to Dr. Kelley's intention. See Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (holding that the consultative examining physician's opinion did not provide substantial evidence to support the ALJ's finding of light work where the opinion was vague and its meaning was left to the ALJ's speculation). Further, it appears that Dr. Kelley did not review the MRIs of Plaintiff's spine prior to offering an opinion and diagnosis. (R. at 504). The failure to review Plaintiff's MRIs in making an already incomplete assessment further demonstrates that Dr. Kelley's opinion should not have formed the sole source for the ALJ's RFC. See Alessi v. Colvin, No. 14 Civ. 7220, 2015 WL 8481883, at *5-6 (E.D.N.Y. Dec. 9, 2015) ("[T]here is insufficient basis in the record to determine . . . [claimant's RFC] especially because . . . the sole medical source whose functional assessment the ALJ gave 'great weight' to did not review the lumbar and cervical MRIs, which showed some abnormalities . . . . While the ALJ himself considered the MRIs, the ALJ is not a medical professional who can interpret the MRIs to assess [claimant's] RFC.").

When "'the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC],' a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., No. 16-1042, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017) (citation omitted) (quoting Tankisi v. Comm'r of Soc. Sec.,

521 Fed. App'x 29, 34 (2d Cir. 2013) (summary order)). But Monroe—as well as the other Second Circuit cases on which it relies—still requires that the administrative record be sufficiently comprehensive to permit an informed finding by the ALJ. Id. (treating source's notes "provide[d] contemporaneous medical assessments of [claimant's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity," as well as "notes relating to [claimant's] social activities relevant to her functional capacity"). There is not sufficient information from Dr. Calabrese's notes to indicate Plaintiff's limitations, and the record contains no other medical opinion addressing how Plaintiff's diagnoses relate to her ability to sit, stand, walk, or carry over 10 pounds. Therefore, this Court finds there was no basis from which the ALJ could determine Plaintiff to be limited to light work. See Englert, 2016 WL 3745854, at *4 ("Neither this Court nor the ALJ is empowered to make medical conclusions about a claimant's physical condition where . . . those medical records are limited to bare medical findings about a complex physical impairment"); Skupien v. Colvin, No. 13-CV-403S, 2014 WL 3533425 at *4 (W.D.N.Y. July 16, 2014) ("because the treating physicians' records provide little evidence concerning [plaintiff's] ability to perform work-related functions, there is no sound basis from which the ALJ could made a common sense judgment about functional capacity.").

The Second Circuit has long recognized that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted). Accordingly, this Court concludes that remand is appropriate to allow the ALJ to properly develop the record. Englert, 2016

WL 3745854, at *4 ("remand is required to allow the ALJ to obtain a physical RFC assessment or medical source statement to supplement the gaps in the medical record.").

11. In addition to challenging the ALJ's RFC finding, Plaintiff argues that the ALJ failed to resolve a material conflict between the report of the consultative examiner, Dr. Renee Baskin, and the report of the state agency physician, Dr. D. Mangold, as it relates to Plaintiff's ability to make adequate decisions in the workplace. The ALJ should also evaluate and, if appropriate, address this point on remand.

12. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 14, 2017
      Buffalo, New York

                                                            /s/William M. Skretny
                                                             WILLIAM M. SKRETNY
                                                           United States District Judge